ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

JAN 2 2 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   Michael K. Hagemann (State Bar No. 264570)
2   1801 Century Park East
    Suite 2400
3   Century City, CA 90067
    Tel: (310) 499-4695
4   Fax: (310) 499-4796
    mhagemann@mkhagemann.com
5
    Attorney for Plaintiff
6   AQUA CONNECT, INC.

7

RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT

JAN 2 2 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8

9

10

11

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| 12  AQUA CONNECT, INC., a Nevada<br>13  Corporation,<br>14          Plaintiff,<br>15  vs.<br>16<br>17  CODE REBEL LLC, a Hawaii Limited<br>    Liability Company; ARBEN KRYEZIU,<br>18  an individual; VOLODYMYR BYKOV<br>    a/k/a VLADIMIR BICKOV, an individual<br>19<br>20          Defendants.<br>21<br>22<br>23 | Case No.: CV11-5764 RSWL (MANx)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Courtroom: 21<br><br>Judge: Hon. Ronald S. W. Lew<br><br>Complaint Filed: May 25, 2011<br><br>Trial Date: August 13, 2013 |

24

25

26

27

28

SECOND AMENDED COMPLAINT

# **THE PARTIES**

Plaintiff Aqua Connect, Inc. ("Plaintiff") hereby complains and alleges as follows:

1.  Plaintiff is, and at all times mentioned in this Complaint was, a Nevada Corporation with its principal place of business in Los Angeles County, California.

2.  Upon information and belief, Defendant Code Rebel LLC ("Code Rebel") is a Hawaii limited liability company with its principal place of business in Hawaii. Upon information and belief, Code Rebel has systematic and continuous ties to California, and also purposely availed itself to the benefits and protections of the state of California. Further, its actions in the State of California give rise to this action.

3.  Upon information and belief, Defendant Arben Kryeziu is, and at all times mentioned in this Complaint was, a resident of Hawaii. Upon information and belief, Kryeziu has systematic and continuous ties to California, and also purposely availed himself to the benefits and protections of the state of California. Further, his actions in the State of California give rise to this action.

4.  Upon information and belief, Defendant Volodymyr Bykov a/k/a Vladimir Bickov is, and at all times mentioned in this Complaint was, a resident of Russia. Upon information and belief, Bykov has systematic and continuous ties to California, and also purposely availed himself to the benefits and protections of the state of California. Further, his actions in the State of California give rise to this action.

1

2

## JURISDICTION AND VENUE

3       5.      Plaintiff contends this action was improperly removed to federal

4   court, this court lacks subject matter jurisdiction over this action, and that this action

5   should have been remanded to the California state court in which it originated on October

6   12, 2011.

7

8

## STATEMENT OF FACTS

9

10      6.      Plaintiff sells and markets software known as Aqua Connect

11  Terminal Server ("ACTS").

12

13      7.      On or around January 24, 2008, Bykov, in his capacity as an agent of

14  Code Rebel and at the behest of Arben Kryeziu, downloaded a trial version of ACTS.

15

16      8.      In order to install the ACTS software, Bykov was required to agree

17  to a written End User License Agreement ("EULA").  Bykov agreed to the EULA on

18  behalf of Code Rebel.  A true and correct copy of the EULA that was agreed to is

19  attached as Exhibit 1, and is hereby incorporated herein.

20

21      9.      Upon information and belief, Code Rebel and its agents also

22  requested trial versions of subsequent versions of ACTS, and agreed to the EULAs in

23  effect at the time which were materially the same as Exhibit 1.

24

25      10.     In each EULA, Code Rebel agreed not to reverse engineer the ACTS

26  software.

27

28      11.     All defendants colluded to reverse engineer ACTS.

-2-
SECOND AMENDED COMPLAINT

12.     On or around June of 2009, Code Rebel began distributing a
competing software product, IRAPP TS, that was the result of the reverse engineering of
ACTS, and Code Rebel continues to do so currently. A substantial number of Code
Rebel's IRAPP TS customers are California citizens, and upon information and belief
Code Rebel's website wherein the IRAPP TS software resides is physically located in
California.

13.     Defendants Kryeziu and Bykov have a long history of reverse
engineering and/or misappropriating others' software.

## FIRST CLAIM

(Breach of Contract: As to All Defendants)

14.     Plaintiff incorporates herein by reference paragraphs 1 through 13 of
this Complaint.

15.     The EULA was a written agreement that bound Code Rebel.

16.     Code Rebel breached the EULA by reverse engineering ACTS.

17.     Plaintiff performed all obligations under the agreement.

18.     Code Rebel's breach caused Plaintiff to lose profits because some
customers purchased the competing software program from Code Rebel.

19.     Upon information and belief, Plaintiff lost over $10,000,000.00 in
profit that it would have otherwise earned if Code Rebel did not breach its agreement.

SECOND AMENDED COMPLAINT

20.     With respect to future distribution, upon information and belief, damages would be insufficient because defendants do not have sufficient assets or income to compensate Plaintiff for the future harm likely to be borne by Plaintiff. Further, injunctive relief would avoid the necessity of a multiplicity of suits.

21.     Code Rebel is an alter-ego for the other defendants. The defendants have failed to obey the LLC formalities, Code Rebel was insufficiently capitalized and insured, the other defendants have comingled funds with Code Rebel, and for the court to respect the limited liability status of Code Rebel would sanction a fraud.

## SECOND CLAIM

(False Promise: As to All Defendants)

22.     Plaintiff incorporates herein by reference paragraphs 1 through 21 of this Complaint.

23.     All of the defendants, as part of a conspiracy, made a promise to Plaintiff that they would not reverse engineer ACTS.

24.     That promise was important to the transaction.

25.     All of the defendants intended at the time of making the promise to reverse engineer ACTS.

26.     All of the defendants intended that Plaintiff rely on their promise.

27.     Plaintiff did in fact reasonably rely on their promise.

-4-
SECOND AMENDED COMPLAINT

28.     All of the defendants conspired to reverse engineer ACTS.

29.     Plaintiff was harmed because it lost profits because some customers purchased the competing software program from Code Rebel.

30.     Plaintiff's reliance on defendants' promise was a substantial factor in causing that harm.  If the defendants had not agreed to the EULA, Plaintiff would not have given them a copy of ACTS, and Code Rebel would have been unable to create a competing product and/or some of the features would have been missing from Code Rebel's product, making it less competitive.

31.     Upon information and belief, Plaintiff lost over $10,000,000.00 in profit that it would have otherwise earned if the defendants did not break their promise.

## THIRD CLAIM

(California Business and Professions Code § 17200: As to All Defendants)

32.     Plaintiff incorporates herein by reference paragraphs 1 through 31 of this Complaint.

33.     The acts and practices alleged to have been committed by the defendants above constitute unlawful, unfair, and fraudulent business acts or practices within the meaning of section 17200 of the Business & Professions Code.

34.     As a result of the unlawful, unfair, and fraudulent business acts or practices of the defendants, Plaintiff suffered damages by losing substantial profits.

35.     Argued in the alternative for each defendant, each defendant

-5-
SECOND AMENDED COMPLAINT

1  received a profit of at least $10,000,000.00, as a result of their unlawful, unfair, and

2  fraudulent business acts or practices at the expense of Plaintiff.

3

4  **FOURTH CLAIM**

5  (Unjust Enrichment: As to All Defendants)

6

7        36.    Plaintiff incorporates herein by reference paragraphs 1 through 35 of

8  this Complaint.

9

10        37.    For all the reasons explained above, all defendants were unjustly

11  enriched.

12

13        38.    Argued in the alternative for each defendant, each defendant

14  received a profit of at least $10,000,000.00, as a result of their unlawful, unfair, and

15  fraudulent business acts or practices at the expense of Plaintiff.

16

17  **PRAYER FOR RELIEF**

18

19      WHEREFORE, Plaintiff prays that judgment be entered against the named

20  defendants as follows:

21

22  **FIRST CLAIM**

23

24        1.    For contract damages of at least $10,000,000.00 according to proof.

25

26        2.    For specific performance in the form of an injunction restraining all

27  defendants from distributing the fruits of their reverse engineering, which includes but is

28  not limited to: the source code of ACTS, the source code/compiled version of Code

-6-<br>SECOND AMENDED COMPLAINT

Rebel's terminal server product, IRAPP TS, and any and all software products that are a derivative of IRAPP TS or ACTS.

**SECOND CLAIM**

3.     For damages of at least $10,000,000.00 according to proof.

4.     For an injunction restraining all defendants from distributing the fruits of their reverse engineering, which includes but is not limited to: the source code of ACTS, the source code/compiled version of Code Rebel's terminal server product, IRAPP TS, and any and all software products that are a derivative of IRAPP TS or ACTS.

5.     For punitive damages.

**THIRD CLAIM**

6.     For disgorgement of profits of at least $10,000,000.00 according to proof.

7.     For an injunction restraining all defendants from distributing the fruits of their reverse engineering, which includes but is not limited to: the source code of ACTS, the source code/compiled version of Code Rebel's terminal server product, IRAPP TS, and any and all software products that are a derivative of IRAPP TS or ACTS.

**FOURTH CLAIM**

8.     For restitution of illicit profits in the amount of at least $10,000,000.00 according to proof.

9.     For an injunction restraining all defendants from distributing the fruits of their reverse engineering, which includes but is not limited to: the source code of ACTS, the source code/compiled version of Code Rebel's  terminal server product, IRAPP TS, and any and all software products that are a derivative of IRAPP TS or ACTS.

## **ALL CLAIMS**

10.     For prejudgment interest.

11.     For costs of suit incurred in this action.

12.     For such other and further relief as the court deems proper.

DATED:  January 18, 2013

By: _____
Michael K. Hagemann
Attorney for Plaintiff, AQUA CONNECT, INC.

-8-
SECOND AMENDED COMPLAINT

1

## **JURY TRIAL DEMAND**

2

3        Plaintiff hereby demands a jury trial pursuant to Rule 38(a) of the Federal Rules of

4     Civil Procedure.

5

6     DATED: January 18, 2013

7

8                                    By: _____
                                        Michael K. Hagemann
9                                        Attorney for Plaintiff, AQUA CONNECT, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

14-Day Trial Agreement

AQUA CONNECT, INC ("Licensor") IS WILLING TO LICENSE THE ENCLOSED SOFTWARE AND DOCUMENTATION (the "Software") TO YOU ("You OR Licensee") ONLY ON THE CONDITION THAT YOU ACCEPT ALL OF THE TERMS IN THIS 14-DAY TRIAL AGREEMENT (the "Agreement").   IF YOU ARE AN EMPLOYEE OR AGENT OF A COMPANY (The "Company") AND ARE ENTERING INTO THIS AGREEMENT TO OBTAIN THE SOFTWARE FOR USE BY THE COMPANY FOR ITS OWN BUSINESS PURPOSES, YOU HEREBY AGREE THAT YOU ENTER INTO THIS AGREEMENT ON BEHALF OF THE COMPANY AND THAT YOU HAVE THE AUTHORITY TO BIND THE COMPANY TO THE TERMS AND CONDITIONS OF THIS AGREEMENT.

BY CLICKING ON THE "ACCEPT" BUTTON BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTAND IT, AND AGREE TO BE BOUND BY IT.   IF YOU DO NOT AGREE TO ANY OF THE TERMS BELOW, LICENSOR IS UNWILLING TO LICENSE THE SOFTWARE TO YOU, AND YOU SHOULD CLICK ON THE "DO NOT ACCEPT" BUTTON BELOW TO DISCONTINUE THE INSTALLATION PROCESS.   IN SUCH CASE, ANY AMOUNTS ALREADY PAID BY YOU, IF ANY SHALL BE REFUNDED BY LICENSOR.

1. SOFTWARE.   The terms and conditions of this Agreement apply to the software products and related documentation (the "Software") that Licensor provides to Licensee under this Agreement solely for evaluation purposes.

2. LICENSE GRANT. During the Trial Period (as defined in Section 9 below) and subject to Licensee's compliance with the terms and conditions of this Agreement, Licensor grants to Licensee a limited, revocable, non-exclusive, non-transferable, non-sublicensable license to install and use the Software during the Trial Period, in object code form only, in accordance with the Documentation for the sole purpose of evaluating the Software, in order to assist in Licensee's decision to purchase a license.

3. RESTRICTIONS.   Licensee may not use or copy the Software, or any copy thereof, in whole or in part, except for internal evaluation purposes as expressly provided for in this Agreement.   Licensee may not install, copy, reproduce or use the Software on more than One (1) Server and Ten (10) clients.   Licensee shall not, nor shall it permit, assist or encourage any third party to:   (a) modify, adapt, alter, translate or create derivative works from the Software; (b) allow any third party to access the Software (directly or remotely over any network) or otherwise use the Software in connection with a service bureau or to provide services to a third party; (c) sublicense, lease, rent, or loan the Software, or otherwise transfer the Software to any third party; (d) reverse engineer, decompile, disassemble or otherwise attempt to derive the source code for the Software, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation; or (e) otherwise exercise rights to the Software except as expressly allowed under Section 2.

4. OWNERSHIP.   The Software and the Feedback, and all worldwide intellectual property rights and proprietary rights to the foregoing, are the exclusive property of Licensor and its suppliers.   Licensor and its suppliers reserve all rights in and to the Software not expressly granted to Licensee in this Agreement, and no other licenses or rights are granted by implication, estoppel or otherwise.

5. NO SUPPORT.   Licensor shall have no obligation under this Agreement to correct

any bugs, defects or errors in the Software or to otherwise support or maintain the Software during the Trial Period.

6. EXPENSES.   Each party shall bear all expenses that it may incur in connection with this Agreement.

7. TERM; TERMINATION.   This Agreement is effective as of Today's Date (the "Effective Date") and shall continue for Fourteen (14) days (the "Trial Period").   Upon expiration of the Trial Period the Software will become useless and Licensee will have the option of licensing the Software.   Upon the expiration of the Trial Period, the license granted to Licensee will terminate and Licensee, at its expense, must certify that all relevant materials will be purged. Licensee, if necessary, will also promptly return all copies of the Software and all Confidential Information in its possession to Licensor.

8. CONFIDENTIALITY. "Confidential Information" means the Software, all information provided by Licensor about the Software, Feedback and all information provided by Licensor that is clearly marked or identified as confidential or disclosed under circumstances that would lead a reasonable person to believe such information is confidential. Licensee shall not disclose Confidential Information to any third party or use Confidential Information for any purpose other than as expressly permitted in this Agreement. Licensee agrees that it shall treat all Confidential Information with the same degree of care as it accords to its own confidential information, which in no event shall be less than reasonable care. Licensee shall not disclose the existence of this Agreement, its terms and conditions, or any of the activities pursued hereunder without Licensor's prior written consent.

9. DISCLAIMER.   THE SOFTWARE PROVIDED BY LICENSOR TO LICENSEE IS PROVIDED "AS IS" WITHOUT ANY WARRANTY OF ANY KIND WHATSOEVER. LICENSOR HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES WITH REGARD TO THE SOFTWARE, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT, AND ANY WARRANTIES ARISING OUT OF COURSE OF DEALING OR COURSE OF PERFORMANCE. LICENSOR DOES NOT WARRANT THAT THE SOFTWARE WILL OPERATE WITHOUT INTERRUPTION OR ERROR. LICENSEE ACKNOWLEDGES THAT NO WARRANTIES ARE MADE BY ANY OF LICENSOR'S LICENSORS OR SUPPLIERS.

10. LIMITATION OF LIABILITY. IN NO EVENT WILL LICENSOR BE LIABLE FOR ANY DIRECT, CONSEQUENTIAL, INDIRECT, EXEMPLARY, SPECIAL OR INCIDENTAL DAMAGES, INCLUDING ANY LOST DATA AND LOST PROFITS, ARISING FROM OR RELATING TO THE SOFTWARE OR THIS AGREEMENT, EVEN IF LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.   LICENSOR ALSO DISCLAIMS ALL LIABILITY OF ANY KIND OF LICENSOR'S SUPPLIERS AND LICENSORS.

11. COMPLIANCE WITH LAWS.   Licensee shall comply with all laws, regulations, rules, ordinances and orders applicable to its use of the Software.   Without limiting the foregoing, Licensee shall comply with the relevant export administration and control laws and regulations, as may be amended from time to time, including, without limitation, the United States Export Administration Act, to ensure that the Software is not shipped, transferred or exported (directly or indirectly) in violation of U.S. law.

12. ASSIGNMENT. This Agreement will be binding on and will inure to the benefit of the legal representatives, successors and assigns of the parties. Neither party may assign any of its rights or obligations under this Agreement without the prior written consent of the other party. Any attempted assignment or transfer in violation of the foregoing will be void. Notwithstanding the foregoing, Licensor shall have the right to assign this Agreement to any successor to its business or assets to which this Agreement relates, whether by merger, sale of assets, sale of stock, reorganization or otherwise.

13. GOVERNING LAW. This Agreement will be governed by the laws of the State of California. The state and federal courts in Los Angeles, California shall have exclusive jurisdiction over any disputes arising from or relating to this Agreement and each party expressly consents to the jurisdiction of such courts with respect to all such disputes.

14. MISCELLANEOUS. If any provision of the Agreement is invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. This Agreement may be amended only upon the mutual written consent of Licensor and Licensee. No failure of either party to enforce any of its rights under this Agreement will act as a waiver of those or any other rights. This Agreement constitutes the entire understanding and agreement between the parties regarding the subject matter hereof and supersedes all prior or contemporaneous agreements and understandings, whether written or oral.

"ACCEPT"       or       "DO NOT ACCEPT"