**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AQUA CONNECT, INC., a Nevada Corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CODE REBEL, LLC, a Hawaii Limited Liability Company; ARBEN KRYEZIU, an individual; VOLODYMYR BYKOV a/k/a VLADIMIR BICKOV, an individual; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | CV 11-5764 (MANx)<br><br>**ORDER re: Defendants Code Rebel, LLC, Arben Kryeziu, and Vlodomyr Bykov's Motion to Dismiss Second Amended Complaint for Failure to State a Claim [80]** |

　　Before the Court is Defendants Code Rebel, LLC, Arben Kryeziu, and Volodymyr Bykov's (hereinafter collectively referred to as "Defendants") Motion to Dismiss Second Amended Complaint for Failure to State a Claim [80]. This Motion was set for hearing on March 19, 2013, and taken under submission on March 14, 2013. Having reviewed all the papers and arguments submitted pertaining to this Motion, **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

1

The Court hereby **DENIES** Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim.

## I. BACKGROUND

On May 25, 2011, Plaintiff Aqua Connect, Inc. ("Plaintiff") filed this Action against Defendants Code Rebel, Arben Kryeziu, and Volodymyr Bykov a/k/a Vladimir Bickov in the Superior Court of California, County of Los Angeles [1]. On July 13, 2011, the Action was removed to this Court [1].

Plaintiff alleges that Defendants reverse engineered a fourteen-day trial version of Plaintiff's software, known as Aqua Connect Terminal Server ("ACTS"), and subsequently produced and distributed a competing software product, in violation of an End-User License Agreement ("EULA") that Defendants signed. Plaintiff's Second Amended Complaint ("SAC") alleges claims for (1) breach of contract; (2) false promise; (3) unfair competition under California Business and Professions Code § 17200; and (4) unjust enrichment.

Defendants filed the present Motion to Dismiss Second Amended Complaint on February 15, 2013 [80]. Defendants only seek to dismiss Plaintiff's breach of contract claim.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a dismissal can be based on the lack of cognizable legal theory or the lack of sufficient facts alleged under a

cognizable legal theory.  Fed. R. Civ. P. 12(b)(6); see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A party need not, however, state the legal basis for his claim, only the facts underlying it.  McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990).

Defendants argue that Plaintiff's Second Amended Complaint alleges a breach of contract claim that must be dismissed.  Plaintiff's breach of contract claim is based on Defendants' alleged breach of the EULA to which agreed Defendants prior to installing the trial ACTS.  The relevant EULA provision states,

> Licensee shall not, nor shall it permit, assist or encourage any third party to: . . . (c) reverse engineer, decompile, disassemble or otherwise attempt to derive source code for the Software, **except and *only to the extent* that such activity is expressly permitted by applicable law notwithstanding this limitation.**
> . . .

SAC, Ex. 1, § 3 (emphasis added).  Plaintiff contends that Defendants breached this provision of the EULA by reverse engineering the trial ACTS.  See SAC ¶ 16.

The resolution of this Motion depends upon interpreting this EULA provision.  Plaintiff argues that the Court should interpret the EULA provision to mean that a "licensee may not reverse engineer the [trial ACT] software unless the law does not allow

3

waiver of the right to reverse engineering in that context," meaning that reverse engineering is restricted under the EULA to the maximum extent allowed by law.  Pl.'s Opp'n at 2, 4.  Defendants argue that they have not breached the EULA.  Instead, they contend that reverse engineering is "permitted by applicable law" under the EULA because allegedly the Copyright Act, the Digital Millennium Copyright Act ("DMCA") and the California Uniform Trade Secrets Act, among others, allow reverse engineering.

For the purposes of this Motion, the Parties agree that the Court should assume that Defendants have in fact reverse engineered Plaintiff's product.  As discussed below, the Court finds that Defendants' argument lacks merit.

"Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."  Monaco v. Bear Stearns Residential Mortg. Corp., 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008) (citing Bedrosian v. Tenet Healthcare Corp., 208 F.3d 220 (9th Cir. 2000); Westlands Water Dist. v. U.S. Dep't of Interior, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994) ("A motion to dismiss cannot be granted against a complaint to enforce an ambiguous contract.")).  A contract provision is considered ambiguous when it is susceptible to two or more reasonable interpretations.  Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal.4th 854, 867 (1993).  "Courts will not adopt

a strained or absurd interpretation in order to create an ambiguity where none exists." Id.  Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.  Id.; see also Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265 (1992).

 The Court finds that the EULA provision at issue is unambiguous because it is not susceptible to more than one construction.  Based on its plain language, the provision means that a licensee agrees that it will not reverse engineer Plaintiff's software except in those specific instances expressly permitted by law.  Thus, unless Defendants reverse engineered in a manner expressly allowed or protected by applicable law, Defendants' reverse engineering constitutes a breach of the EULA.  Accordingly, in order to be covered under the EULA exception, Defendants need to show that there is law explicitly stating that Defendants' activity is permissible.

 Although Defendants' arguments are not entirely clear, Defendants appear to be interpreting the EULA to mean that reverse engineering is permitted under the EULA if there is **any law** that permits reverse engineering in **some other context**.  Also, Defendants seem to be contending that reverse engineering is always expressly permitted by law, except in those few instances that Defendants have identified where law

5

expressly prohibits reverse engineering, such as patent law.  However, the contract does not lend itself to such an interpretation and, as further discussed below, the authority cited by Defendants indicate that reverse engineering is not actually permitted in every circumstance.  In particular, Defendants' reading of the contract does not give sufficient meaning to the words "except and only to the extent," which indicate that the EULA prohibits reverse engineering in all situations other than those specific instances allowed by law.

   Further, Defendants' proposed interpretation of the EULA provision renders it ineffective and superfluous. "Any contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable."  <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal. App. 4th 445, 473 (1998) (citations omitted).  Further, "[c]ourts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless."  <u>Id.</u>  The result of Defendants' proposed interpretation would be that Plaintiff could never state a breach of contract claim under the EULA, even though the EULA is clearly intended to proscribe reverse engineering whenever possible.  Defendants' interpretation would also conflict with the general

intent of the contract, which is to limit the scope of the license granted to trial ACTS software users. Under the EULA, the ACTS software is provided "solely for evaluation purposes . . . in order to assist in Licensee's decision to purchase a license" and prohibited the licensee from exercising any other rights to the software, including creating derivative works from the software or altering or adapting the software.  SAC, Ex. 1.  Further, the license expired after fourteen days.  Id.

Defendants have raised and cited to laws that, according to Defendants, "expressly permit" reverse engineering, such as the California Uniform Trade Secrets Act and the DMCA.  However, these laws do not support Defendants' contention that Plaintiff cannot state a claim for **breach of contract**.  For example, the California trade secrets law does not stand for the general proposition that reverse engineering is "expressly permitted" by law.  Rather, under the California trade secret statute, reverse engineering alone cannot form the basis of a cause of action for misappropriation of a trade secret.  Cal. Civ. Code § 3456.1.  This was addressed in the Court's prior order on Defendants' Motion to Dismiss First Amended Complaint for Failure To State a Claim, which dismissed Plaintiff's misappropriation of trade secrets claim [30].  Plaintiff is not asserting a misappropriation of trade secrets claim.  Instead it is asserting a breach

of contract claim, which is premised on Defendants' alleged reverse engineering of Plaintiff's software in violation of the terms of the EULA.  Even if Plaintiff cannot state a claim for misappropriation of trade secrets, it can still state a claim for breach of contract.

Defendants' citation to the DMCA for the proposition that reverse engineering is expressly permitted by law and thus allowed under the EULA is also misplaced.  Among other features, the DMCA penalizes individuals who circumvent technological measures that are used to protect and control access to copyrighted works.  17 U.S.C. § 1201.  However, the DMCA provides an exception by allowing reverse engineering in specific instances.  See id.  One exception, among others, is reverse engineering in order to identify and analyze

> those elements of the program that are necessary to achieve interoperability of an independently created computer program with other programs, and that have not previously been readily available to the person engaging in the circumvention, to the extent any such acts of identification and analysis do not constitute infringement under this title.

17 U.S.C. § 1201.  These exceptions do not affect Plaintiff's breach of contract claim.  Plaintiff has not alleged any DMCA claim.  Although reverse

1 engineering, in some cases, does not violate the DMCA,
2 reverse engineering may still breach a contract that
3 otherwise prohibits reverse engineering.  In other
4 words, just because reverse engineering is permissible
5 in one context does not mean that reverse engineering
6 is generally allowed *under the language of the EULA*.
7      The Court also rejects Defendants' suggestion that
8 Plaintiff's breach of contract claim must be dismissed
9 because reverse engineering is "expressly permitted" by
10 copyright law.  The primary cases addressing reverse
11 engineering in the copyright context, upon which
12 Defendants rely, do not create an absolute right to
13 reverse engineer software.  Specifically, the Ninth
14 Circuit held in <u>Sega Enterprises Ltd. v. Accolade,</u>
15 <u>Inc.</u>, that reverse engineering qualifies as *fair use* in
16 some specific instances, which can be a defense to a
17 claim of **copyright infringement**.  977 F.2d 1510, 1515
18 (9th Cir. 1992).  The Court held that
19           the Copyright Act permits persons who are
20           neither copyright holders nor licensees to
21           disassemble a copyrighted computer program in
22           order to gain an understanding of the
23           unprotected functional elements of the program
24           . . . when the person seeking the understanding
25           has a legitimate reason for doing so and **when**
26           **no other means of access to the unprotected**
27           **elements exists**.
28 <u>Id.</u> (emphasis added); <u>see also</u> <u>Sony Computer Entm't,</u>

1  Inc. v. Connectix Corp., 203 F.3d 596, 602 (9th Cir.
2  2000).  Although the case makes clear that reverse
3  engineering is permissible in some limited cases under
4  the *fair use doctrine*, the case does not generally
5  stand for the proposition that reverse engineering is a
6  right under **any** set of circumstances.  Further, Sega
7  Enterprises indicates that other instances of reverse
8  engineering do not necessarily qualify as fair use
9  because courts must still weigh the statutory fair use
10 factors delineated under the Copyright Act, 17 U.S.C. §
11 107.  More importantly, the Ninth Circuit in Sega
12 Enterprises did not involve an end user license
13 agreement that restricted reverse engineering.  Here,
14 the EULA precludes all forms of reverse engineering
15 that are not expressly permitted by law.
16      Finally, Defendants' reliance upon Entertainment
17 Research Group, Inc. v. Genesis Creative Group, Inc.,
18 122 F.3d 1211 (9th Cir. 1997), for the proposition that
19 reverse engineering is always permitted under law is
20 also misplaced.  Defendants rely upon Genesis because
21 the Ninth Circuit states there that reverse engineering
22 is legal in a product not protected by a patent.
23 Entm't Research Group, Inc., 122 F.3d at 1227.
24 However, in Genesis, the Ninth Circuit made this
25 statement while addressing a different cause of action,
26 and did not address the possibility that a contractual
27 term itself could prohibit reverse engineering.  In
28 Genesis, the Ninth Circuit found that the defendant did

10

not commit the California tort of breach of confidence when it reversed-engineered the plaintiff's inflatable costumes. Id. at 1227-28. To prevail on a breach of confidence claim, plaintiff had to demonstrate, *inter alia*, that it conveyed confidential information to the defendant. Id. at 1227. The Court noted that because the plaintiff did not require previous purchasers of its inflatable costumes to sign non-disclosure agreements in order to prevent reverse engineering from occurring, any design information that plaintiff conveyed to defendant was not confidential as a matter of law, and no breach of confidence occurred. Id. The Ninth Circuit supported this reasoning by stating that reverse engineering is legal in an unpatented product. Id. This case does not stand generally for the proposition that reverse engineering is expressly permitted and is inapplicable here.

In sum, the EULA prohibits all reverse engineering, except when there is explicit law that authorizes Defendants' conduct. Thus, to the extent that Plaintiff's breach of contract claim is based on explicitly protected forms of reverse engineering, Plaintiff cannot state a claim for breach of the EULA. At this point, Defendants have not identified any law protecting their reverse engineering activities and Defendants have not shown that they have engaged in the type of reverse engineering that is expressly permitted by law. Therefore, their Motion to Dismiss must be

1 denied.

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim.

**IT IS SO ORDERED.**

DATED: April 4, 2013

*RONALD S.W. LEW*
───────────────────────────────
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge