Michael K. Hagemann (State Bar No. 264570)
1801 Century Park East
Suite 2400
Century City, CA 90067
Tel: (310) 499-4695
Fax: (310) 499-4796
mhagemann@mkhagemann.com

Attorney for Plaintiff
AQUA CONNECT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AQUA CONNECT, INC., a Nevada Corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CODE REBEL LLC, a Hawaii Limited Liability Company; ARBEN KRYEZIU, an individual; VLADIMIR BICKOV; and DOES 1 through 300 inclusive,<br><br>　　　　　Defendants. | Case No.: CV11-5764 RSWL (MANx)<br><br>Courtroom: 580<br><br>Judge: Hon. Margaret A. Nagle<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO COMPEL, ETC. [91]**<br><br>Complaint Filed: May 25, 2011<br><br>Trial Date: August 13, 2013 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO COMPEL, ETC.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Aqua Connect, Inc. hereby submits its opposition to Defendants Arben Kryeziu, Vladimir Bickov, and Code Rebel, LLC's Ex Parte Application to Compel, Etc.

## I.  INTRODUCTION

This ex parte application has a simple resolution which has already been proposed by Plaintiff on numerous occasions: <u>Defendants can have their own expert build the executables requested from the source code provided by Plaintiff</u>.  Plaintiff's offer will still be on the table while this application is pending, and even if the Court denies this application.

To summarize the ex parte application, Defendants are asking this Court to either:
(a) require Plaintiff to create something:
    (i) that is not in its possession, custody, or control; **and**
    (ii) that Defendants' own expert can create from the information supplied by Plaintiff with an equal amount of effort;
(b) or, in the alternative, require Plaintiff to do something it has already done.

A request for production is not a tool to get a party to create something that is not in its possession, custody, or control.  Nor is a request for production an interrogatory which can be rewritten *ex post facto* after the discovery cut-off.  There is simply no evidence that Defendants' expert cannot build the versions at issue with the information provided by Plaintiff.

Finally, ex parte relief is completely inappropriate because approximately nine months ago Plaintiff told Defendants that it had already turned over everything responsive it had, and Defendants did not file a motion, nor make anything more than an informal request for the executables five months later without referencing previous discovery requests or responses.  One month ago, Plaintiff unequivocally told Defendants it wasn't going to build executables for Defendants, and that they were welcome to have their own expert build them if they wanted them.  Any emergency is that of Defendants'

own making.

## II. STATEMENT OF FACTS

Plaintiff complaint alleges, *inter alia*, that Defendants reverse engineered Plaintiff's software to create and improve a competing software product. Plaintiff's software is known as Aqua Connect Terminal Server ("ACTS") and Defendants' software is known as iRAPP TS. Defendants admit they downloaded and installed one version of Plaintiff's software in January of 2008, version 1038, and a subsequent version, version 1478, was e-mailed to Bykov in March of 2008. (Hagemann Decl. ¶ 2.)

On September 12, 2012, Plaintiff told Defendants it had produced every responsive document. (Ex. 1.) Plaintiff further supplemented its response to Request for Production Number 14 on September 14, 2012 to make it clear that it wasn't producing executables. (Ex. D, [91-1 p. 27].)

Plaintiff has provided complete access to its source code repository to Defendants' expert, Jeffrey Safire. (Hagemann Decl. ¶ 3.) Defendants' expert actually viewed Plaintiff's source code for one entire day, January 29, 2013, and he has requested and unilaterally cancelled several follow-up inspections. (*Id.* ¶ 4.)

On February 20, 2013, Defendants requested the executables via e-mail so that Mr. Safire could examine them. (Ex. M, [91-1 p. 64-65].) Plaintiff's counsel responded that he would check with his client. (*Id.*) To the best of Plaintiff's counsel's recollection, shortly thereafter, the parties followed up telephonically regarding the executables, and Plaintiff's counsel suggested that Mr. Safire build whatever versions he wished. (Hagemann Decl. ¶ 5.) This point was reiterated on April 19, 2013. (Ex. K [91-1 p. 58-59].) On April 30, 2013 at 6:31 pm, Plaintiff sent an e-mail unequivocally stating that it wasn't going to build executables for Defendants. (Ex. 2.)

## III. ARGUMENT

    **a. Ex Parte Relief Is Not Appropriate Because Defendants Waited Nine Months After The Last Supplement To Bring This Issue To The Court's Attention**

1          On September 12, 2012, Plaintiff sent an e-mail to Defendants which said: "This
2  production should conclude the full production of all documents we agreed to produce,
3  except for those items such as source code that we invited you to inspect pursuant to the
4  protective order provisions."
5          On September 14, 2012, Plaintiff further supplemented its response to Request for
6  Production Number 14 to clearly state what it was producing in response:
7          Notwithstanding any of the previous responses, responding party agrees to
           produce all responsive documents in its possession, custody, or control.
8          Responding party identifies the following responsive documents in its
           possession, custody, or control:
9          AquaConnect Terminal Server source code (available for inspection
10         pursuant to section III(E) of the protective order.)
11         There was no further supplement to Request for Production Number 14 after
12 September 14, 2012, nor any complaints from Defendants.
13         On February 20, 2013, about twenty days after Defendants' expert, Jeffrey Safire,
14 began his inspection of Plaintiff's source code, Defendants requested the executables via
15 e-mail so that Mr. Safire could examine them. There was no reference to Request for
16 Production Number 14, or any other discovery request. Plaintiff's counsel responded that
17 he would check with his client. To the best of Plaintiff's counsel's recollection, shortly
18 thereafter, the parties followed up telephonically regarding the executables, and
19 Plaintiff's counsel suggested that Mr. Safire build whatever versions he wished. On
20 April 19, 2013 the parties exchanged another series of e-mails in which Plaintiff
21 reiterated its position again regarding Safire being welcome to build any executables he
22 so desired. (Ex. K [91-1 p. 58-59].) On April 30, 2013 at 6:31 pm, Plaintiff sent an e-
23 mail which stated:
24         Regarding the executables of ACTS, my client conducted a diligent search
           for any copies of the builds you requested, and couldn't find them in its
25         possession, custody, or control. While they can theoretically re-build an
           executable from source, the problem is that it would take them a substantial
26         amount of time. If I understand the problem right, the build links to
           network directories that don't exist anymore, and for which manual
27         corrections are needed, they don't have the necessary hardware/OS
28         combination reasonably available to build, and they would then need to try

-3-
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO
COMPEL, ETC.

1
2
3
4           to find the appropriate XCode version to compile it.  If things slow down for my client, which they hope will happen in a month or two, they may be able to build the versions you requested, but it's just not practical right now.  It is my understanding it would cost them the equivalent of $20,000.00 to build them right now.  I would suggest talking to your expert and see if he can build it.

5         Defendants did not follow-up for another month.  Then, they sent notice of this ex
6   parte application at 10:56 pm on May 28, 2013.   Plaintiff responded to the notice,
7   explaining what is explained in this opposition.  (Ex. O, [91-2 p. 8].)  A noticed motion
8   could have been heard already if Defendants had filed a motion after Plaintiff's
9   unambiguous refusal of their request on April 30, 2013.

10        Finally, Defendants have placed themselves in an internally inconsistent position.
11  If they argue that Plaintiff failed to comply and/or supplement Request for Production
12  Number 14, then they waited almost nine months and well after the discovery cut-off to
13  compel a response/compliance.  Plaintiff's discovery response of September 14, 2012 is
14  clear and unambiguous: it was going to produce source code, not executables.  If
15  Defendants argue that Plaintiff failed to comply with their informal request for
16  executables on February 20, 2013, then the delay in filing is far more reasonable, but
17  there is no basis to compel a response to an informal request.

18        **b.**      **Plaintiff Has Already Complied With The Request, But Now**
19                  **Defendants Are Implicitly Attempting To Rewrite The Request**

20        There is no dispute that Defendants' Request for Production number fourteen is a
21  request to produce electronically stored information:
22
23          Please produce the version of YOUR Aqua Connect Terminal Server from which YOU contend CODE REBEL reverse engineered to produce its "IRAPP TS" product.

24         Therefore, subparts (b)(2)(D) and (E) of Rule 34 of the Federal Rules of Civil
25  Procedure govern.  Defendants requested the "versions" of Plaintiff's software at issue.
26  Having failed to specify executables or source code, Plaintiff elected to produce source
27  code from which executables could be built by Defendants.  Producing the source code is
28  strictly superior from an information disclosure standpoint.  It provides the same

-4-
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO COMPEL, ETC.

information as the executable, plus more (the underlying source code).  Further, the e-mails attached by Defendants actually show how they continuously conflated "versions" with "source code" with "executables."  (*See*, *e.g.*, Exs. F-M.)

All electronically stored information is merely a bunch of ones and zeros.  Fed. R. Evid. 201(b).  In order to view the ones and zeros in a human-readable format, a viewing application is required.  *Id.*  Even a PDF document requires a PDF viewer, such as Adobe Reader, to view.  *Id.*  Here, the viewing application required to view <u>AND</u> execute the "versions" at issue produced by Plaintiff is XCode and OS X version 10.5.  (Ex. 2.)  The executables requested by Defendants are equally not human-readable, and can only be executed by OS X version 10.5.  Fed. R. Evid. 201(b).  Other than XCode, the same environment would be required to execute the source code or executable.  (Ex. 2.)  Therefore, there is no fundamental reason why executables are superior to source code in this context.

Further, Defendants admit they downloaded two versions of Plaintiff's software.  There are potentially thousands of other versions which Defendants could have easily obtained by providing false contact information to Plaintiff, on file sharing websites, or from third parties.  Fed. R. Evid. 201(b).  Therefore, it was far more practical to provide access to the entire source code repository than to produce executables.  This is because minor changes in the source code would be a small entry in the source code repository, but could drastically change the executable.  Thus, it is far more efficient, storage-wise, to store source code.

Additionally, producing source code in lieu of executables is analogous to subpart (d) of Rule 33:

> Option to Produce Business Records.  If the answer to an interrogatory may be determined by examining, auditing, **compiling**, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by …
> (emphasis added)

Notwithstanding the above, because Plaintiff has a source code repository, there is generally no reason to keep the executables, especially executables from five years ago, well before this lawsuit was filed. Specifically, <u>Plaintiff simply does not have the executables Defendants admitted to downloading five year ago</u>. (Ex. 2.) That being said, with equal effort, either Plaintiff or Defendants can create executables from the source code provided by Plaintiff. (*Id.*)

It is Plaintiff's position that effort should be borne by Defendants. If Defendants' expert is unable to build the application from source code, then that is very telling of the expert's qualifications. Even though there is no legal basis to require a party to create something, from a fairness standpoint, there is no evidence that Defendants' expert cannot build the versions at issue with the information provided by Plaintiff.

### c. There Is No Duty To Produce Something Which Is Not In The Responding Party's Possession, Custody, Or Control

A request for production can only compel, "items in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). If Defendants have any evidence that the executables are actually in the possession, custody, or control of Plaintiff, they should have attached it to this application. If not, then there is no basis to compel compliance when non-compliance has not been proven.

### d. There Is No Duty To Specify In A Response To A Request For Production Each Item Which Is <u>Not</u> In The Possession, Custody, Or Control Of The Responding Party

Defendants fundamentally misunderstand Rule 34, and are attempting to rewrite it. Requests for production are about obtaining items held by the responding party. They are not interrogatories, and the response itself to a request for production is typically binary. A response to a request for production is usually either:

(1) After a diligent search and reasonable inquiry, responding party was unable to locate any responsive items in its possession, custody or control.

(2) Responding party agrees to produce all responsive items in its possession,

-6-
PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO COMPEL, ETC.

custody, or control.

If there is one or more responsive items, then there would be no difference in the required response between one and many responsive items. The difference would be in the production: if there is more than one item, more than one item is produced.

Here, Plaintiff elected the latter response because there is at least one responsive item: the source code. If Defendants wanted to compel only executables, then they could have propounded a different request for production while discovery was open. Or, if they wanted a question answered, not the production of items, they could have propounded a follow-up interrogatory. Neither of these possible follow-up requests were utilized. Nor can Plaintiff fathom any additional relevance to these putative follow-up requests.

Additionally, Plaintiff went above and beyond the response requirement, and specifically listed the responsive documents, which did not include executables. Even though such a response is unnecessary, it is exactly what Defendants are requesting in the alternative. In other words, Plaintiff complied with Defendants' alternative request almost nine months ago.

Presumably, Defendants want the executables first-and-foremost because it is their primary request in this application. If they had spent their resources building the executable instead of filing an ex parte application, they might have already built it by now.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' application as an improper ex parte, and as lacking in substantive merit.

DATED: May 30, 2013

                                      By: /s/ Michael K. Hagemann
                                      Michael K. Hagemann
                                      Attorney for Plaintiff, AQUA CONNECT, INC.