1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Aqua Connect, | CV 11-05764 RSWL (MANx) |
|            Plaintiff, | |
|    vs. | **ORDER RE:** Defendants' Motion for Summary Judgment, or in the Alternative for Summary Adjudication [102]; Defendants' Motion for Sanctions for Spoliation of Evidence [105] |
| Code Rebel, LLC; Arben Kryeziu; Volodymyr Bykov; and DOES 1 through 10, | |
|            Defendants. | |

Currently before the Court are Defendant Code
Rebel, LLC ("Code Rebel"), Arben Kryeziu ("Kryeziu"),
Volodymyr Bykov a/k/a Vladimir Bickov's ("Bykov")
(collectively, "Defendants") Motion for Summary
Judgment, or in the Alternative for Summary
Adjudication [102], and Defendants' Motion for
Sanctions for Spoliation of Evidence [105].  The Court,
having considered all papers and arguments submitted
pertaining to this Motion, **NOW FINDS AND RULES AS**
**FOLLOWS:**

Defendants' Motion for Summary Judgment is **GRANTED**

**IN PART, AND DENIED IN PART**.  Defendants' Motion for Sanctions is **DENIED.**

## I.   BACKGROUND

Both Plaintiff and Defendants sell and market software.  Second Amended Compl. ("SAC") ¶¶ 3, 6. Defendant Kryeziu is the managing partner and the only member of Defendant Code Rebel.  According to the SAC, Defendant Bykov is a resident of Russia and worked as an agent of Defendant Code Rebel and "at the behest of Defendant Kryeziu."  <u>Id.</u>  ¶¶ 4, 7.

Plaintiff alleges that Defendant Bykov, in his capacity as an agent of Defendant Code Rebel, downloaded a free, fourteen-day trial version of Plaintiff's Aqua Connect Terminal Server ("ACTS") software on or about January 24, 2008.  <u>Id.</u> ¶ 7.  ACTS allows users to interact with Apple Mac computers and/or servers.  Defs.' Stmt. of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 3.  Before installing ACTS, Defendant Bykov agreed to an End User License Agreement ("EULA"), which forbids reverse engineering. <u>See</u> SAC ¶¶ 8, 10, Ex. 1.  Plaintiff claims all Defendants colluded to reverse engineer ACTS and create a competing software product, IRAPP TS, in violation of the EULA.  <u>Id.</u> ¶ 11.  According to Defendants, IRAPP TS allows users to view and fully interact with remote or locally networked Mac OS X terminal servers.  SUF ¶ 2.

Based on Defendants' alleged reverse engineering of ACTS and subsequent distribution of IRAPP TS, Plaintiff

brings this current Action against Defendants for (1)
breach of contract; (2) false promise; (3) unfair
competition under California Business and Professions
Code § 17200; and (4) unjust enrichment.

## II. DISCUSSION

**A.   Defendants' Motion for Summary Judgment, or in the**
**Alternative for Summary Adjudication [102]**

1.   Legal Standard

Summary judgment is appropriate when there is no
genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56.  A genuine issue is one in which the evidence is
such that a reasonable fact-finder could return a
verdict for the non-moving party.  Anderson v. Liberty
Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the
initial burden of establishing the absence of a genuine
issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986).  Once the moving party makes this
showing, the non-moving party must set forth facts
showing that a genuine issue of disputed material fact
remains.  Celotex, 477 U.S. at 322.  The non-moving
party is required by Federal Rule of Civil Procedure
56(e)[1] to go beyond the pleadings and designate specific
facts showing a genuine issue for trial exists.  Id. at

---

[1] The Federal Rules of Civil Procedure were amended on
December 1, 2010. Federal Rule of Civil Procedure 56(e) has now
been codified as Federal Rule of Civil Procedure 56(c).

324.

2.   Evidentiary Objections

The Parties submitted numerous evidentiary objections to various declarations and documents filed in support of the Parties' papers.  To the extent the Court has relied on evidence to which the Parties have objected those objections are **OVERRULED.**

3.   Analysis

Defendants' Motion for Summary Judgment seeks to dismiss all of the claims alleged in Plaintiff's SAC. The Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion.

a.   Breach of Contract - **DENY**

Defendants make three basic arguments with respect to Plaintiff's breach of contract claim: (1) the EULA lacked consideration because the ACTS software that Defendant Bykov downloaded failed to operate after he installed it onto his computer; (2) the EULA "expired" fourteen days after Bykov agreed to it; and (3) Plaintiff lacks evidence that Defendants reverse engineered the ACTS software.

The EULA is governed by California law.  SAC, Ex. 1 ¶ 13.  The standard elements of a claim for breach of contract are: (1) the existence of a contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendants' breach, and (4) resulting damage to Plaintiff.  Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008).

4

Consideration is present when the promisee either
confers a benefit or suffers a prejudice.  Steiner v.
Thexton, 48 Cal. 4th 411, 420–21 (2010) (citing Cal.
Civil Code § 1605).  Although "either alone is
sufficient to constitute consideration," the benefit or
prejudice "must actually be bargained for as the
exchange for the promise . . .  Put another way, the
benefit or prejudice must have induced the promisor's
promise."  Id.  (internal quotation marks omitted).

First, the Court finds that there is consideration
for the EULA.  Plaintiff offered its software in
exchange for Defendants' promise not to reverse
engineer it.  Defendants claim that Plaintiff's
contract lacks consideration because Defendant Bykov
asserts that the computer program did not function when
he downloaded and installed it on January 28, 2008.
Defendant Bykov claims that he uninstalled the software
the next day.  The only evidence supporting these
assertions are Defendant Bykov's declaration and
deposition testimony.  The sole exhibit that Defendants
provide is a printout containing *instructions* on how to
*uninstall* Plaintiff's software.  The exhibit does not
show that Bykov actually did uninstall the software.
Defendants do not provide any other evidence that the
ACTS program failed or that it was uninstalled.  It is
possible that the software was not defective, but that
it simply did not work on Defendant Bykov's computer on
the day he installed it.  Even where no evidence is

presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient.  <u>Hoover v. Switlik Parachute Co.</u>, 663 F.2d 964, 967 (9th Cir. 1981) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 160 (1970); <u>Sherman v. British Leyland Motors</u>, Ltd., 601 F.2d 429, 439 (9th Cir. 1979)).

Further, the Court finds that there is a genuine dispute of fact as to whether or not Defendants reverse engineered Plaintiff's ACTS software following Defendant Bykov's downloading and installation of the ACTS in January 2008.  Plaintiff offers evidence that particular elements of its software appear in Defendants' software, including a "human error".  <u>See</u> Plaintiff's Stmt. of Genuine Disputes of Material Facts ("GMF") ¶ 17.  Further, Plaintiff offers testimony from its Chief Technical Officer that a feature that appeared in the version of ACTS that Defendants downloaded appeared in Defendants' software after Defendants downloaded Plaintiff's ACTS software.  <u>Id.</u> ¶ 16.  On a summary judgment motion, the Court construes the evidence in the light most favorable to the non-moving party.  A reasonable juror could find that reverse engineering of Plaintiff's ACTS occurred.  Defendants have failed to show that Plaintiff lacks evidence to support its claims.

The Court also finds that the evidence Defendants have provided in support of their summary judgment

motion is insufficient to meet their initial summary judgment burden.  The only evidence Defendants provide to support their allegation that they did not reverse engineer Plaintiff's software are their own self-serving declarations wherein Defendant Bykov and Kryeziu generally state that they did not reverse engineer Plaintiff's software.  A defendant's conclusory denial of wrongdoing fails to satisfy the threshold requirements of Rule 56.  In re Rogstad, 126 F.3d 1224, 1227 (9th Cir. 1997).  Further, the contrasting declarations submitted by the Parties would cause a ruling on this issue to be essentially equivalent to a credibility determination, which is inappropriate for summary judgment.  See Matsushita Elec. Indus., Inc. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(affirming the principle that credibility determinations are not appropriate for summary judgment).

The Court also finds unavailing Defendants' argument that the EULA "expired" after fourteen days and that Plaintiff must prove that reverse engineering occurred within fourteen days of installing the ACTS. The EULA states,

> This Agreement is effective as of Today's Date (the "Effective Date") and shall continue for Fourteen (14) days (the "Trial Period").  Upon expiration of the Trial Period the Software will become useless and Licensee will have the

> option of licensing the Software.  Upon the
> expiration of the Trial Period, the license
> granted to Licensee will terminate and
> Licensee, at its expense, must certify that all
> relevant materials will be purged.  Licensee,
> if necessary, will also promptly return all
> copies of the Software and all Confidential
> Information in its possession to Licensor.

SAC, Ex. 1 at ¶ 7.  Defendants appear to interpret this provision to mean that users of Plaintiff's software are allowed to reverse engineer the software so long as the reverse engineering occurred after fourteen days of agreeing to the EULA.  However, the EULA makes clear that the license – that is, the *permission* to use Plaintiff's software – ended after fourteen days.  The EULA *does not* state that Defendants' obligation to refrain from reverse engineering Plaintiff's software ends after fourteen days.  Clearly the provisions prohibiting reverse engineering were included to protect Plaintiff's software by preventing reverse engineering and copying of Plaintiff's software, including after the software license expired.  Adopting Defendants' interpretation of this EULA provision would require an absurd result where users can freely reverse engineer Plaintiff's software once the license expires. See <u>Kashmiri v. Regents of University of California</u>, 156 Cal. App. 4th 809, 842 (2007) ("The interpretation of a contract 'must be fair and reasonable, not leading

1  to absurd conclusions.'") (citation omitted).

2          b.  False Promise - **GRANT**

3      Under California law, "[a] person may not

4  ordinarily recover in tort for the breach of duties

5  that merely restate contractual obligations." Aas v.

6  Sup. Ct., 24 Cal.4th 627, 643 (2000).  "Courts will

7  generally enforce the breach of a contractual promise

8  through contract law, except when the actions that

9  constitute the breach violate a social policy that

10 merits the imposition of tort remedies." Stop Loss

11 Ins. Brokers, Inc. v. Brown & Toland Med. Grp., 143

12 Cal. App. 4th 1036, 1041 (2006).  "Conduct amounting to

13 a breach of contract becomes tortious only when it also

14 violates a duty independent of the contract arising

15 from principles of tort law." Erlich v. Menezes, 21

16 Cal.4th 543, 551 (1999).  However, a tortious breach of

17 contract may occur where, "(1) the breach is

18 accompanied by a traditional common law tort, such as

19 fraud or conversion; (2) the means used to breach the

20 contract are tortious, involving deceit or undue

21 coercion or; (3) one party intentionally breaches the

22 contract intending or knowing that such a breach will

23 cause severe, unmitigable harm in the form of mental

24 anguish, personal hardship, or substantial

25 consequential damages." Id. at 553-54 (internal

26 quotation marks omitted)).  "Whether a defendant owes a

27 duty of care arising from a source outside of the

28 parties' contract is a question of law." Valenzuela v.

ADT Sec. Serv., Inc., No. 09-2075, 2010 WL 7785571, at *8 (C.D. Cal. Apr. 29, 2010); Jhaveri v. ADT Sec. Servs., Inc., 2:11-CV-4426-JHN, 2012 WL 843315 (C.D. Cal. Mar. 6, 2012).

The California Supreme Court has "strongly suggested" that, in the absence of the violation of a duty arising under tort law independently of the breach of contract itself, lower courts should limit tort recovery in breach of contract actions to the insurance area. BNSF Ry. Co. v. San Joaquin Valley R. Co., No. 1:08-CV-01086-AWI, 2011 WL 3328398, at *6 (E.D. Cal. Aug. 2, 2011) (citing Freeman v. Mills, 11 Cal.4th 85, 95 (1995)). California courts have permitted tort damages in contract cases only when the tort liability is "either completely independent of the contract"; arises from intentional conduct intended to harm, such as when a breach of duty causes a physical injury; in insurance contract actions involving a breach of the covenant of good faith and fair dealing; for wrongful discharge in violation of fundamental public policy; or when the plaintiff was fraudulently induced to enter the contract. Erlich, 21 Cal.4th at 551-52.

Plaintiff's false promise claim is based upon (1) Defendants' alleged promise not to reverse engineer, which was made when signing the EULA; (2) Defendants' intent to break that promise at the time they entered the contract; and (3)Defendants' breaking of that promise by allegedly reverse engineering Plaintiff's

10

product.   SAC ¶¶ 22-31.   Plaintiff's tort claim merely restates its breach of contract claim.   Plaintiff has failed to allege that Defendants have violated any independent duty outside the contract or that Plaintiff was fraudulently induced to enter into the contract with Defendants.   Therefore, the Court **GRANTS** Defendants' Motion as to Plaintiff's false promise claim.

        c.   <u>Unfair Competition</u> - **DENY**

Defendants seek dismissal of Plaintiff's unfair competition claim on the basis that all of Plaintiff's other claims fail.   The Court finds that there are genuine issues of fact as to whether Defendants reverse engineered Plaintiff's software, which is the basis of Plaintiff's unfair competition claim.   Therefore, Defendants' Motion must be denied as to Plaintiff's unfair competition claim.

Defendants also argue that because all of the alleged reverse engineering activities occurred outside of California and California's unfair competition law does not apply extraterritorially, Plaintiff's unfair competition claim must be dismissed.   The Court finds that Defendants' argument lacks merit.   Indeed, California courts have long acknowledged a general presumption against the extraterritorial applications of state laws.   <u>Sullivan v. Oracle Corp.</u>, 51 Cal.4th 1191, 1207 (2011).   Applying that presumption, state and federal courts have concluded that the California

Unfair Competition Law does not reach claims of *non-California residents arising from conduct occurring entirely outside of California*.   <u>Norwest Mortg., Inc. v. Super. Ct.</u>, 72 Cal. App. 4th 214 (1999) (holding that the unfair competition law was inapplicable to "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California"); <u>In re Apple and AT & T iPad Unlimited Data Plan Litig.</u>, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing unfair competition claims by non-California residents who purchased their iPad and data plans outside of California); <u>Churchill Vill., L.L.C. v. Gen. Elec. Co.</u>, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (rejecting claims by non-California consumers where none of the defendant's written or oral communications made in California was directed to consumers outside the state), <u>aff'd</u>, 361 F.3d 566 (9th Cir. 2004). However, Plaintiff and Defendants' activities involve California.  Plaintiff is a California resident.  SAC ¶ 1.  Defendants allegedly received data from Plaintiff in California, and sell their software, which was allegedly derived from Plaintiff's software, to California customers.

Based on the foregoing, Defendants' Motion must be **DENIED** as to Plaintiff's unfair competition claim.

///

        d.  <u>Unjust enrichment</u> - **GRANT**

    There is a split within California courts regarding whether unjust enrichment is an independent cause of action.  <u>Compare</u> <u>Jogani v. Superior Ct.</u>, 165 Cal. App. 4th 901 (2008), <u>and</u> <u>McKell v. Wash. Mut., Inc.</u>, 142 Cal. App. 4th 1457 (2006), <u>and</u> <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379 (2004), <u>with</u> <u>Lectrodryer v. SeoulBank</u>, 77 Cal. App. 4th 723 (2000), <u>and</u> <u>First Nationwide Sav. v. Perry</u>, 11 Cal. App. 4th 1657 (1992). "Generally, federal courts in California have ruled that unjust enrichment is not an independent cause of action because it is duplicative of relief already available under various legal doctrines." <u>See</u> <u>Vicuna v. Alexia Foods, Inc.</u>, No. C 11-6119 PJH, slip op. at *3 (N.D. Cal. April 27, 2012).

    Plaintiff's unjust enrichment claim seeks damages of $10,000,000 that is duplicative of relief available under its breach of contract and unfair competition claims.  Therefore, the Court **GRANTS** Defendants' Motion as to Plaintiff's unjust enrichment claim.

        e.  <u>Defendant Bykov's Liability</u>

    Defendants argue that Bykov is entitled to judgment as a matter of law because he entered into the EULA as an agent for Code Rebel and in the course of his employment.  Therefore, Defendants claim, Bykov is not personally liable for any of Plaintiff's claims.

    First, the Court finds that there is a genuine issue of fact as to whether Defendant Bykov could be

held personally liable for breach of contract.

Under California law, an agent who makes a contract on behalf of an undisclosed or unidentified principal is a party to the contract and may be sued individually.  <u>Bank of America v. State Bd. of Equal.</u>, 209 Cal. App. 2d 780, 796 (1962); <u>Stephan v. Maloof</u>, 274 Cal. App. 2d 843, 850 (1969); Restatement (Third) of Agency, §§ 6.03(2), 6.02(2) (agent for an unidentified principal is a party "unless the agent and the third party agree otherwise"); <u>accord</u>, <u>G.W. Andersen Constr. Co. v. Mars Sales</u>, 164 Cal. App. 3d 326, 331 (1985) (liability of agent for a "partially disclosed principal" under Restatement (Second) of Agency, §§ 4(2)).  "Whether a principal is disclosed, undisclosed, or unidentified depends on the manifestations of the principal and the agent and the notice received by the other party at the time of that party's transaction with the agent."  Restatement (Third) of Agency, § 1.04, com. b.  A principal is "undisclosed" if the other party has no notice that the agent is acting for a principal (Restatement (Third) of Agency, § 1.04(2)(b)); a principal is "unidentified" if the other party has notice that the agent is acting for a principal but has no notice of the principal's identity (<u>id.</u>, § 1.04(2)(c)).  "The agent can protect himself from personal liability by clearly disclosing the fact of agency and the identity of his principal. Failing that, the other party is entitled to rely on

the liability of the person with whom he dealt." <u>Mars Sales</u>, 164 Cal. App. 3d at 332.

The Parties do not appear to dispute that Bykov acted in an agent capacity.  However, Defendants argue that Bykov was an agent of Code Rebel, and Plaintiff argues that Bykov was an agent of either Code Rebel or Kryeziu.  The Court finds that there is a genuine dispute of fact as to whether a principal was disclosed to Plaintiff.  Plaintiff provides evidence demonstrating that Bykov requested the trial version of ACTS using his own name and the company name, Code Perfect, which suggests that the true identity of the principal was not revealed to Plaintiff.  GMF ¶ 1; <u>see</u> <u>Mars Sales</u>, 164 Cal. App. 3d at 332 ("use of a trade name is not sufficient disclosure of the identity of the principal to protect the agent from personal liability").  Therefore, Defendant Bykov may be individually liable for breach of contract.

Defendants also assert that under the Restatement of Agency, Bykov is not a party to the EULA because allegedly Bykov and Plaintiff agreed so, citing to the following EULA provision:

> IF YOU ARE AN EMPLOYEE OR AGENT OF A COMPANY (The "Company") AND ARE ENTERING INTO THIS AGREEMENT TO OBTAIN THE SOFTWARE FOR USE BY THE COMPANY FOR ITS OWN BUSINESS PURPOSES, YOU HEREBY AGREE THAT YOU ENTER INTO THIS AGREEMENT ON BEHALF OF THE COMPANY AND THAT YOU HAVE THE

AUTHORITY TO BIND THE COMPANY TO THE TERMS AND CONDITIONS OF THIS AGREEMENT.

SAC, Ex. 1.  The Court observes that this contract language merely states that the signee purports that he has authority to bind his employer.  The EULA does not indicate that Bykov and Plaintiff agreed that Bykov is not a party to the contract.

As to Plaintiff's unfair competition claim, an individual can be held liable under California's unfair competition law if she directly participated in the unfair practice.  See People v. Toomey, 157 Cal. App. 3d 1, 14 (1984).  Plaintiff alleges that Defendant Bykov downloaded its ACTS software and reverse engineered it.  As such, Defendant Bykov could be held personally liable for Plaintiff's unfair competition claim.  The Court therefore **DENIES** Defendants' Motion as to Defendant Bykov.

f.  Defendant Kryeziu's Liability

Defendants argue that Kryeziu is not liable as a matter of law for any of Plaintiff's claims because he was acting in his capacity as officer of Code Rebel when he instructed Bykov to download and evaluate ACTS. Defendants cite to no authority for this proposition.

Further, Plaintiff alleges in its Second Amended Complaint that Kryeziu is liable in his individual capacity based on alter ego liability.  SAC ¶ 21.  In determining whether alter ego liability applies, a federal court applies the law of the forum state.

16

<u>Schwarzkopf v. Brimes</u>, 626 F.3d 1032, 1037 (9th Cir. 2010) (applying California alter ego law in a federal bankruptcy case); <u>see also</u> <u>S.E.C. v. Hickey</u>, 322 F.3d 1123, 1128 <u>opinion amended on denial of reh'g sub nom.</u> <u>Sec. & Exch. Comm'n v. Hickey</u>, 335 F.3d 834 (9th Cir. 2003); <u>F.D.I.C. v. LSI Appraisal, LLC</u>, SA CV 11-706 DOC ANX, 2011 WL 5223061 (C.D. Cal. Nov. 2, 2011) (applying California alter ego law to a Motion to Dismiss).  To invoke the alter ego doctrine, Plaintiff must show: (1) that there is such a unity of interest and ownership that the separate personalities of Defendants Code Rebel and Kryeziu no longer exist, and (2) that if the acts complained of in Plaintiff's Complaint are treated as those of only Defendant Code Rebel, an inequitable result will follow.  <u>See</u> <u>Wady v. Provident Life and Accident Ins. Co. of Am.</u>, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (citing <u>Mesler v. Bragg Mgmt. Co.</u>, 39 Cal.3d 290, 300 (1985)); <u>see also</u> <u>Sonora Diamond Corp. v. Superior Ct.</u>, 83 Cal. App. 4th 523, 538 (2000) ("In California, two conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.").  "Among the factors to be considered in applying the doctrine are

17

commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." <u>Roman Catholic Archbishop v. Superior Court</u>, 15 Cal. App. 3d 405, 411 (1971).

The Court finds that there is a genuine dispute of fact as to whether Code Rebel is the alter ego of Defendant Kryeziu.  Plaintiff provides evidence of Code Rebel's bank statements showing debits to Kryeziu and his wife.  <u>See</u> Pl.'s Sealed Stmt. of Genuine Disputes of Material Facts ¶ 6.  It also provides evidence showing that Code Rebel's first month's ending balance was $520, suggesting that Code Rebel was undercapitalized.  <u>Id.</u> ¶ 10.  Therefore, the Court **DENIES** Defendants' Motion as to Defendant Kryeziu.

**B.** **<u>Defendants' Motion for Sanctions for Spoliation of Evidence [105]</u>**

Defendants filed the instant Motion for Sanctions, asserting that Plaintiff has destroyed the executable files of the 2008 ACTS software that they downloaded. Defendants argue that the Court should impose the following sanctions: (1) a jury instruction to instruct the jury that it may draw an inference adverse to Plaintiff regarding the content of those executable files; and (2) an order barring Plaintiff from

presenting any witness testimony and any other evidence
based on the destroyed evidence at the trial of this
matter.  For the reasons discussed below, the Court
**DENIES** Defendants' Motion.

    1.  <u>Legal Standard</u>

    Spoliation is defined as the "destruction or
material alteration of evidence, or the failure to
otherwise preserve evidence for another's use in
litigation."  <u>See</u> <u>Surowiec v. Capital Title Agency,
Inc.</u>, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011).  Under
its inherent power to control litigation, a district
court may levy sanctions, including dismissal of the
action, for spoliation of evidence.  <u>Leon v. IDX Sys.
Corp.</u>, 464 F.3d 951, 958 (9th Cir. 2006) (citing
<u>Anheuser-Busch, Inc. v. Natural Beverage Distribs.</u>, 69
F.3d 337, 348 (9th Cir. 1995)).

    "A party seeking sanctions for spoliation of
evidence must prove the following elements: (1) the
party having control over the evidence had an
obligation to preserve it when it was destroyed or
altered; (2) the destruction or loss was accompanied by
a 'culpable state of mind;' and (3) the evidence that
was destroyed or altered was 'relevant' to the claims
or defenses of the party that sought the discovery of
the spoliated evidence."  <u>Surowiec</u>, 790 F. Supp. 2d at
1005 (citation omitted).

    Sanctions are only appropriate when a party had
some notice that the destroyed evidence was potentially

relevant.  <u>See</u> <u>Leon</u>, 464 F.3d at 959; <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1001 (9th Cir. 2002).  A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business.  <u>See</u> <u>Kitsap Physicians</u>, 314 F.3d at 1001-02 (affirming the district court's finding of no spoliation when potentially relevant documents were destroyed in the defendants' normal course of business).

    2.  <u>Evidentiary Objections</u>

The Parties submitted numerous evidentiary objections to various declarations and documents filed in support of the Parties' papers.  To the extent the Court has relied on evidence to which the Parties have objected those objections are **OVERRULED**.

    3.  <u>Analysis</u>

The Court **DENIES** Defendants' Motion.  First, the Motion appears to be moot.  Both Parties have informed the Court that Plaintiff has recently produced what may be the executable files for the January 2008 version of the ACTS that Defendants allegedly downloaded.  It seems that no spoliation occurred.  Without more information as to whether spoliation actually occurred, the Court declines to award the sanctions that Defendants presently seek.  The Court also notes that Defendants never specifically asked for the executable files during discovery, and elected to file a motion to

1  compel the executable files only after the discovery

2  deadlines had already expired.

3      Second, even assuming that the executable files

4  recently produced are not the executable files that

5  Defendants downloaded in 2008, Defendants have failed

6  to demonstrate why the executable files are relevant or

7  why the executable files will provide information that

8  the source code for ACTS, which Plaintiff and

9  Defendants agree have been produced, could not.

10  Defendants have only provided conclusory assertions as

11  to the relevance of the executable files, and do not

12  provide any response to Plaintiff's claim that the

13  source code offers the same information, if not more,

14  as the executable files.

15      Therefore, the Court **DENIES** Defendants' Motion for

16  Sanctions.

17

18

19

20

21

22

23

24

25

26

27

28  ///

### III. CONCLUSION

For the reasons set forth above, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment as follows:

- Breach of Contract - **DENY**
- False Promise - **GRANT**
- Unfair Competition - **DENY**
- Unjust Enrichment - **GRANT**

The Court **DENIES** Defendants' Motion for Sanctions.

**IT IS SO ORDERED.**

Dated: July 23, 2013.

RONALD S.W. LEW

_____

**HONORABLE RONALD S. W. LEW**
U.S. District Court Judge