Andres F. Quintana (SBN 190525)
John M. Houkom (SBN 203240)
**QUINTANA LAW GROUP**
A Professional Law Corporation
26135 Mureau Road, Suite 101
Calabasas, California 91302
Telephone:  (818) 914-2100
Facsimile:  (818) 914-2101
E-mail:  andres@qlglaw.com
          john@qlglaw.com

Attorneys for Defendants Code Rebel,
LLC, Arben Kryeziu, and Volodmyr Bykov

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUA CONNECT, a Nevada Corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>CODE REBEL, LLC, a Hawaii Limited Liability Company; ARBEN KRYEZIU, an individual; VOLODYMYR BYKOV, an individual,<br><br>                Defendants. | CASE NO.  CV11-5764 RSWL (MANx)<br><br>**DEFENDANTS CODE REBEL, LLC, ARBEN KRYEZIU, AND VOLODYMYR BYKOV'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER CHARACTER EVIDENCE**<br><br>Complaint Filed:  March 25, 2011<br><br>Trial Date:  April 15, 2014 |

Quintana Law
Group, APC

## I.  **INTORDUCTION**

Plaintiff Aqua Connect, Inc.'s ("Plaintiff" or "Aqua Connect") Opposition to Defendants Code Rebel, LLC, ("Code Rebel"), Arben Kryeziu ("Kryeziu"), and Volodymyr Bykov's ("Bykov", or collectively with Code Rebel and Kryeziu, "Defendants") Motion *in Limine* No. 2 To Exclude Improper Character Evidence (the "Motion *In Limine*") does not squarely address the points raised in that motion, and instead misrepresents its own purported "expert" opinions to avoid the exclusion of clearly inappropriate character evidence.  Defendants' Motion *In Limine* should be granted, and character evidence, including any testimony or other evidence regarding CherryOS, PearPC, or Maui X-Stream, regarding any perceived conflict between Defendants and Apple, should be excluded from the trial in this case.

Plaintiff's Opposition attempts, unsuccessfully, to skirt the central issues: Character evidence is generally inadmissible because it is of slight probative value and highly prejudicial nature.  That is especially true in this case, where the character evidence Plaintiff is attempting to introduce deals with issues unrelated to the substance of Plaintiff's claims.

Instead of addressing those issues head-on, Plaintiff instead misrepresents and conflates issues in an attempt to mislead this Court:  Plaintiff mischaracterizes the evidence at issue as related to reverse engineering, when it is not; Plaintiff misrepresents a single incident as *eight* instances, to try to mislead the Court into concluding that the "habit" exception should apply; and, Plaintiff misrepresents the basis for Defendants' unclean hands defense as an excuse to try to introduce improper character evidence to allegedly prove the "truth" of statements that are not at issue in any claim or defense in this case.

Plaintiff's Opposition, flawed though it is, provides a great illustration of why the evidence at issue should be excluded.  Plaintiff and its counsel, who hold themselves out as educated in regard to computer science, consistently conflate the

1  use of "open source" computer code, which is available to the public, with the

2  reverse engineering of proprietary computer code, which is a way of learning the

3  inner workings of computer code precisely because that information is not open to

4  the public.  If Plaintiff and its counsel cannot keep the difference between the use of

5  "open source" code and reverse engineering straight (regardless of whether

6  Plaintiff's apparent confusion is real or an affectation adopted to try to mislead the

7  Court with regard to the Motion *In Limine*), how could a jury be expected to?  Even

8  if it were not inappropriate, inadmissible character evidence, which it is, the

9  evidence at issue should still be excluded because its prejudicial value (large)

10  outweighs its probative value (negligible) by several orders of magnitude.

11      In other words, Plaintiff's only opposition to the Motion *In Limine* is to make

12  up justifications out of misrepresentations and distortions, to try to hide the reality

13  that Plaintiff's 'bad man' evidence has no place before the jury in this case.

14  Defendants Motion *In Limine* No. 2 should be granted in its entirety, and all

15  character evidence, including any testimony or other evidence regarding CherryOS,

16  PearPC, or Maui X-Stream, regarding any perceived conflict between Defendants

17  and Apple, should be excluded from the trial in this case.

18                  ## II.   **RELEVANT FACTS**

19      Throughout its Opposition, Plaintiff repeatedly refers to evidence of "reverse

20  engineering" in regard to the "expert" report of Kristian Hermansen ("Hermansen"),

21  but even a cursory review of Hermansen's report reveals that he provides an opinion

22  related to PearPC, CherryOS and Maui X-Stream that deals solely with the

23  purported use, not of reverse engineering, but instead of "open course" software –

24  software code that is published to the public and intended for the use of the public.

25      Hermansen contends in his report that when Defendant Kryeziu was

26  employed by Maui X-Stream, that company used "open source" software, PearPC,

27  to create another piece of software, CherryOS, without proper attribution.  In other

28  words, Defendant Kryeziu's employer used information made available *to the*

Quintana Law
Group, APC

*public* inappropriately, without conducting any reverse engineering at all.  In fact, Plaintiff has produced no evidence of any reverse engineering related to Maui X-Stream, CherryOS or PearPC, and Plaintiff's Opposition is making a misrepresentation each time it claims differently.

Further, Hermansen's "expert" report analyzes only a ***single*** incidence of alleged misuse of "open source" software.  Plaintiff's Opposition falsely states that Hermansen describes "eight examples of reverse engineering." Opposition, p. 4, l. 26-27.  In fact, Hermansen's report claims there was a single occurrence of the misuse of "open source" software, and attempts to describe 8 similarities between PearPC and CherryOS to support that irrelevant conclusion.

Even if there were a hundred instances of one of Defendants' former employers misusing "open source" software, it would not be admissible evidence in this lawsuit about purported reverse engineering.  (Opposition, p. 1, l. 27-28 ("Plaintiff's complaint alleges, *inter alia*, that Defendants reverse engineered Plaintiff's software to create and improve a competing software program").  The fact that there is only one such purported incident, which Plaintiff misrepresents as eight, merely demonstrates that Plaintiff is well aware that the facts would not support the admission of such character evidence at trial, and Plaintiff is desperate to present character evidence to the jury simply to portray the Defendants as bad people,

### III.   ARGUMENT

Plaintiff argues that the character evidence it intends to introduce at the trial of this matter is admissible, based on 5 distinct, and unavailing, grounds. However, there is also a fundamental misrepresentation that undergirds each of Plaintiff's arguments:  Plaintiff's Opposition consistently asserts that the character evidence it wishes to introduce demonstrates other instances of "reverse engineering."

Even if Plaintiff's arguments were based on the actual facts, which they are not, and even if it could shoe-horn the character evidence at issue into one of the

Quintana Law
Group, APC

limited exceptions, which Plaintiff cannot, the character evidence at issue should still be excluded by this Court, because its extremely limited probative value, if any, is dwarfed by the prejudice that would result from parading irrelevant, demeaning assertions before the jury in this case.

Plaintiff's attempt to introduce expert opinion evidence, or any other evidence, regarding CherryOS, PearPC, or Maui X-Stream, or regarding Apple or any other unrelated behavior, is all designed to introduce character evidence that is irrelevant to the claims and defences in this case, and should be excluded from the trial in this case.

### A.    The Character Evidence Plaintiff Seeks To Introduce Does Not Meet The Requirements Of *Fed.R.Evid.* §404.

Plaintiff contends in its Opposition that the evidence it seeks to introduce at trial regarding "Maui X-Stream" (Opposition, p. 3, l. 12), which is the subject of the Motion *In Limine*, is admissible under *Fed.R.Evid.* §404(b)(2), because it demonstrates the "absence of mistake and lack of accident in the reverse engineering" (*Id.*, p. 3, l. 12-13) and is "probative of preparation, plan and knowledge regarding reverse engineering." *Id.*, p. 3, l. 16-16.

Again, there are no allegations of reverse engineering by Maui X-Stream in Plaintiff's proposed evidence or even in the "Expert Report" of purported expert Kristian Hermansen,[1] which instead attempts to render opinions about the use of "open source" software, *not* reverse engineering.

Thus, Plaintiff's contention that actions that Plaintiff's own purported expert

---

[1] Defendants previously filed Motion *In Limine* No. 12, seeking to exclude the testimony and purported "Expert Report" of Hermansen on multiple bases, including irrelevancy, unreliability, and late disclosure.   While the continuance of the trial date to allow Plaintiff to complete the trial preparation it has failed to attend to during the previous discovery period *might* cure the tardy production of the Hermansen "Expert Report," the other fundamental failures embodied by that document remain.

Quintana Law
Group, APC

1    does not even consider reverse engineering, and which no honest person would
2    characterize as reverse engineering, somehow demonstrates the "absence of mistake
3    and lack of accident in the reverse engineering" (*Id.*, p. 3, l. 12-13) or a
4    "preparation, plan and knowledge regarding reverse engineering" (*Id.*, p. 3, l. 16-16)
5    is ludicrous on its face.

6        Instead, there is only a singular, obvious purpose for introducing claims that
7    one of the Defendants, Arben Kryeziu, was previously involved with a company that
8    allegedly misused "open source" software:  To imply to the jury that the Defendants
9    are bad people that did something wrong in the past, and therefore are more likely
10   that not to have done some unrelated and dissimilar wrong in regard to Plaintiff's
11   software.  Use of character evidence in that way is expressly barred by the *Federal*
12   *Rules of Evidence*, and Defendants' Motion *In Limine* should be granted.

13       **B.     The Character Evidence Plaintiff Intends To Attempt To Introduce
14             Does Not Qualify As "Habit" or "Routine Practice" Evidence.**

15       Plaintiff also contends that the character evidence that is at issue in the
16   Motion *In Limine* should be admitted pursuant to *Fed.R.Evid.* §406, as evidence of
17   "Defendant Kryeziu's habit and practice of reverse engineering."  Opposition, p. 4,
18   l. 16-17.   Again, the character evidence at issue is not evidence of reverse
19   engineering *at all*.

20       Even as Plaintiff's Opposition lays out the three factors enumerated in *U.S. v.*
21   *Angwin*, 271 F.3d 786, 799 (9th Cir. 2001), it is obvious that the character evidence
22   at issue does not qualify as a habit.  First, reverse engineering is clearly volitional,
23   rather than reflexive:   We are talking about a complex process of software
24   development, not the buckling of a seatbelt or the locking of a door.

25       Second, as noted above, the acts described in the Hermansen report are not
26   reverse engineering, but instead the purported improper use of "open source"
27   software.   The second *Angwin* element is obviously not met here, where the
28   behavior complained about in the operative pleading is completely different than the

1    behavior Plaintiff wants to introduce as evidence of a "habit."

2         Third, there is only a single instance of purported misuse of "open source"
3    software in the Hermansen report, and it was not conducted by any of the
4    Defendants, but instead by a company that has not been sued, that only Defendant
5    Kryeziu previously worked for, and the other two Defendants – Code Rebel and
6    Bykov – never had any relationship with.   The law has long held that a single
7    occurrence is not proof of a habit.   *See Knickerbocker Life Ins. Co. v. Foley*, 105
8    U.S. 350, 354, 15 Otto 350, 26 L.Ed. 1055 (1881) ("It would be incorrect to say that
9    a man has a habit of anything from a single act."); *Northwestern Mut. Life Ins. Co.*
10   *v. Muskegon Nat. Bank*, 122 U.S. 501, 512, 7 S.Ct. 1221, 1226-1227, 30 L.Ed. 1100
11   (1887) ("When we speak of the habits of a person we refer to his customary
12   conduct, to pursue which he has acquired a tendency from frequent repetition of the
13   same acts. It would be incorrect to say that a man has a habit of anything from a
14   single act.").   Further, as the party seeking to introduce "habit" evidence, it is
15   Plaintiff who "bear[s] the burden of establishing the habitual nature of the practice."
16   *Fecho v. Eli Lilly and Co.*, 914 F.Supp.2d 130, 138 (finding that the testimony of
17   two witnesses "falls significantly short of the requisite number of instances and
18   uniformity of response from which to establish" the habitual nature of the practices
19   at issue).

20        Plaintiff contends that Herman's report "lists eight examples of reverse
21   engineering" (Opposition, p. 4, l. 26-27), but in fact, that purported "Expert Report"
22   does not opine as to *any* reverse engineering, and instead remarks on a single
23   instance of purported misuse of "open source" software, through the examination of
24   eight reasons why Hermansen believes there was a misuse of "open source"
25   software by Maui X-Stream.

26        Thus, even if a single instance of the purported misuse of "open source"
27   software by Maui X-Stream could legally be evidence of "habitual" behavior, which
28   it cannot, it would still no be admissible in this case, which is based on claims of

reverse engineering.

**C.    The Purported Misuse Of "Open Source" Software By Maui X-Stream Is Irrelevant To Defendants' Unclean Hands Defense.**

As the Court is aware, and as was pointed out in Plaintiff's Opposition, Defendants intend to present an affirmative defense of unclean hands, based on, among other things, the false statements made by Plaintiff and its officers, agents and employees to customers and potential customers of Defendant Code Rebel. Plaintiff asserts that it should be able to present character evidence, in the form of allegations about Defendant Kryeziu's involvement with Maui X-Stream, to prove the truth of its statements to the Defendant Code Rebel's customers and potential customers.

However, a defense of unclean hands does not mean that Plaintiff is allowed to then present any character evidence it desires, as Plaintiff suggests, and the character evidence Plaintiff intends to introduce has no bearing on the allegedly false statements that support the unclean hands defense. To wit, the false statements that form the substance of Defendants' unclean hands defense are not based on any claims Plaintiff may or may not have made to anyone about Defendant Kryeziu's prior role at Maui X-Stream, and the character evidence at issue in the Motion *In Limine* could not be used to prove the truth of those statements, as Plaintiff contends.

Instead, the false statements made by Plaintiff include:  (1) that Defendant *Code Rebel* was involved in Maui X-Stream or the Maui X-Stream's CherryOS project, and there is no factual dispute that Code Rebel was not (*see* Motion *In Limine* No. 6); and, (2) that Defendant Code Rebel's computer program infringed upon Plaintiff's patents, when Plaintiff did not have and still has no patents. *See* Defendants' Contentions of Fact and Law, p. 14, l. 15-18; Final Pretrial Conference Order, p. 20, l. 23-26.

Plaintiff's intended character evidence that is the subject of the Motion *In*

1  *Limine* would not, and could not, prove the truth of either of those contentions,

2  because they simply do not address the substance of either of those statements.

3  Again, this is just an effort by Plaintiff to misrepresent the scope and content of the

4  character evidence to mislead this Court into denying the Motion *In Limine*.

5      **D.**    **The Character Evidence Plaintiff Is Attempting To Introduce Is**

6          **Not Admissible As An Attack On Credibility.**

7      Plaintiff asserts in its Opposition to the Motion *In Limine* that it is proper to

8  inquire at trial regarding Defendant Kryeziu's "surveillance" of the development of

9  Defendant Code Rebel's computer program, in order to attack his credibility in

10  claiming that he did oversee that process. Opposition, p. 5, l. 9 – p. 6, l.

11      Such activities, however, have no logical relationship to Defendant Kryeziu's

12  experiences while he was associated with Maui X-Stream. This argument does not

13  even reach the threshold set forth in *Fed.R.Evid.* §401, that the evidence have a

14  "tendency to make the existence of any fact that is of consequence to the

15  determination of the action more probable or less probable." *Fed.R.Evid.* §401.

16      Plaintiff is capable of inquiring about Defendant Kryeziu's role in the

17  development of Defendant Code Rebel's computer software, and his role at Maui X-

18  Stream has literally no relevance to that inquiry. Indeed, the only reason to bring up

19  his previous experience with that other entity would be to try to besmirch his

20  reputation before the jury on issues with *no* relevance to the questions before it.

21      **E.**    **Each Basis For Opposing The Admission Of Character Evidence Is**

        **Applicable To All The Forms Of Character Evidence Plaintiff**

22          **Seeks To Put Before The Jury.**

23      In addition to the character evidence Plaintiff seeks to introduce evidence

24  regarding Defendant Kryeziu's relationship with Maui X-Stream, and the issues

25  related to CherryOS and PearPC (which are in the context of Maui X-Stream),

26  Plaintiff has also indicated an intent to introduce evidence regarding a perceived

27  conflict between Defendants and Apple Inc. ("Apple"), but such evidence is also

28  inappropriate character evidence that fits none of the exceptions raised in Plaintiff's

1  Opposition.

2      Plaintiff's Opposition only commits one short paragraph to the evidence
3  regarding any conflict it believes exists between Defendants and Apple, and then
4  only to claim, in conclusory terms, that it is not character evidence.  Opposition, p.
5  6, l. 7-13.  Inexplicably, Plaintiff then goes on to claim that it should be allowed to
6  present evidence that Defendants reverse engineered Apple software – which is only
7  inappropriate character evidence.

8      It must not be forgotten that this is a lawsuit about the supposed breach of a
9  contract between Defendants, or some of them, and Plaintiff, by reverse engineering
10 of *Plaintiff's* computer program.  There are no allegations in the currently operative
11 complaint that reverse engineering of Apple's software (even if it had occurred)
12 would constitute a breach of a contract with Plaintiff, and Plaintiff is not an assignee
13 or other holder of any of Apple's contractual rights.

14     Since it is not relevant to the actual claims being pursued by Plaintiff, such
15 evidence would only constitute character evidence, introduced to attack the
16 character of Defendants, and it is equally inadmissible as any evidence related to
17 Maui X-Stream, CherryOS or PearPC.

18  **F.    The Character Evidence Plaintiff Is Attempting To Introduce**
19       **Would Not Be Admissible In Any Event Pursuant To Fed.R.Evid.**
         **§403.**
20
         Character evidence is of slight probative value and may be very
21       prejudicial. It tends to distract the trier of fact from the main
22       question of what actually happened on the particular occasion. It
         subtly permits the trier of fact to reward the good man and to
23       punish the bad man because of their respective characters despite
24       what the evidence in the case shows actually happened.

25       Id. (internal quotation marks omitted).

26 *Curtin*, 489 F.3d at 944, quoting Advisory Committee Notes to the 1972 Proposed
27 Rules.

28     It should be evident to the Court, both from Plaintiff's pretrial filings and the

arguments in its Opposition, that Plaintiff intends to bring in as many disparate and unconnected issues as possible to try to paint Defendants as 'bad men.' Not only would it be a waste of party and Court resources to allow the presentation of peripheral matters to the jury, it would undoubtedly violate *Fed.R.Evid.* §403 to allow Plaintiff to present its flotilla of unrelated and irrelevant claims of bad acts by Defendants, because their probative value, which is near zero, would be vastly outstripped by their prejudicial value.

Indeed, it is apparent that Plaintiff's real purpose of presenting information about Maui X-Stream and its projects is to paint Defendants in a bad light, so that the jury will be more willing to believe that Defendants committed improper acts against Plaintiff.

That is improper and inappropriate, and should not be allowed by this Court.

## IV.   CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court grant Defendants' motion in its entirety, enter an order excluding from the trial of this matter, any character evidence, including any testimony or other evidence regarding CherryOS, PearPC, or Maui X-Stream, regarding any perceived conflict between Defendants and Apple.

DATED: August 12, 2013            QUINTANA LAW GROUP
                                  A Professional Law Corporation


                                  By:        /s/ Andres F. Quintana
                                  _____
                                  Andres F. Quintana, Esq.
                                  John M. Houkom, Esq.
                                  Attorneys for Defendants Code Rebel,
                                  LLC, Arben Kryeziu and Volodymyr
                                  Bykov

Quintana Law
Group, APC

11