**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Aqua Connect, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Code Rebel, LLC; Arben Kryeziu; Volodymyr Bykov; and Does 1 through 300 inclusive, <br><br> Defendants. | CV 11-5764 RSWL (MANx) <br><br> **ORDER Re: Defendants' Motion in Limine No. 2 to Exclude Improper Character Evidence [191]** |

Currently before the Court is Defendants' Motion in Limine to Exclude Improper Character Evidence [191]. The Court, having reviewed all papers submitted pertaining to this Motion and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion in Limine.

//

1

## I. Background

Both Plaintiff and Defendants sell and market software. Second Amended Compl. ("SAC") ¶¶ 3, 6. Defendant Kryeziu is the managing partner and the only member of Defendant Code Rebel. According to the SAC, Defendant Bykov is a resident of Russia and worked as an agent of Defendant Code Rebel and "at the behest of Defendant Kryeziu." Id. ¶¶ 4, 7.

Plaintiff alleges that Defendant Bykov, in his capacity as an agent of Defendant Code Rebel, downloaded a free, fourteen-day trial version of Plaintiff's Aqua Connect Terminal Server ("ACTS") software on or about January 24, 2008. Id. ¶ 7. ACTS allows users to interact with Apple Mac computers and/or servers. Defs.' Stmt. of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 3. Before installing ACTS, Defendant Bykov agreed to an End User License Agreement ("EULA"), which forbids reverse engineering. See SAC ¶¶ 8, 10, Ex. 1. Plaintiff claims all Defendants colluded to reverse engineer ACTS and create a competing software product, IRAPP TS, in violation of the EULA. Id. ¶ 11. According to Defendants, IRAPP TS allows users to view and fully interact with remote or locally networked Mac OS X terminal servers. SUF ¶ 2.

Based on Defendants' alleged reverse engineering of ACTS and subsequent distribution of IRAPP TS, Plaintiff brings this current Action against Defendants for (1) breach of contract; (2) false promise; (3) unfair

competition under California Business and Professions Code § 17200; and (4) unjust enrichment.

## II.  Legal Standard

A court may make a definitive ruling on the record admitting or excluding evidence, either at or before trial.  Fed. R. Evid. 103.  Regardless of a court's initial decision on a motion in limine, however, it may revisit the issue at trial.  See Luce v. United States, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district court is free, in the exercise of sound judicial discretion, to alter a previous limine ruling.").  "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court."  United States v. Bensimon, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing Luce, 469 U.S. at 41-42).

For purposes of trial, only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if it is probative - having "any tendency to make a fact more or less probable than it would be without the evidence" - and material - "of consequence in determining the action."  Fed. R. Evid. 401.

Federal Rule of Evidence 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that a person acted in accordance with the character or trait."  Similarly, Federal Rule of Evidence 404(b)(1) provides that

"[e]vidence of a crime, wrong, or other act is not admissible to prove character in order to show that on a particular occasion the person acted in accordance with the character."

However, evidence of specific acts is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Alternatively, under Federal Rule of Evidence 406, "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." This evidence may be admitted without corroboration or eyewitness. Id. In other words, habit evidence may be admitted to prove acts in accordance with the habit.

### III. Analysis

Defendants seek to exclude all evidence regarding: (1) CherryOS, PearPC, and Maui X-Stream, (2) a purported conflict between Defendants and Apple, and (3) any other references to wrongful acts committed by Defendants. Defendants base their Motion on Federal Rule of Evidence 404.

**A. <u>CherryOS, PearPC, and Maui X-Stream Evidence</u>**

The Court finds that evidence regarding CherryOS, PearPC, and Maui X-Stream may be admitted pursuant to Federal Rule of Evidence 404(b)(2).

The Ninth Circuit has held that "other act" evidence may be admitted pursuant to Rule 404(b) if the following test is satisfied: "(1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged." Duran v. City of Maywood, 221 F.3d 1127, 1132-33 (9th Cir. 2000).

Furthermore, as the Ninth Circuit has indicated, "Rule 404(b) is a rule of inclusion... Once it has been established that evidence offered serves" to prove a permitted purpose, "the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008) (quoting United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007)).

For the first element of the Duran test, where a party seeks to introduce "other act" evidence under Rule 404(b), the Court applies the test for conditional relevancy found in Rule 104(b). Huddleston v. United States, 485 U.S. 681, 689-690 (1988). In other words, the Court "simply examines all the evidence in the case and decides whether the jury could reasonably find the

conditional fact... by a preponderance of the evidence." Id. at 690.

The Court finds that the first element of the Duran test is established as Plaintiff's expert report by Kristian Hermansen presents sufficient proof of shared source code between PearPC and CherryOS for a jury to find that Maui X-Stream took PearPC source code for CherryOS without proper attribution. Houkom Decl. in Support of Motion in Limine No. 12 [190], Ex. A at 1. For example, the Report finds many shared error messages embedded in CherryOS that can be traced back to PearPC and other open source software. Id. at 5-13. A reasonable jury could thus conclude that Maui X-Stream took PearPC source code without proper attribution.

Addressing the second element of the Duran test, the Court finds that the Maui X-Stream incident is not too remote in time from the acts alleged in the instant case to mandate exclusion. Gaps of up to thirteen years between the "other act" and a case at hand have been found to be not too remote. See United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (finding that in a case where the defendant was charged with improperly using his wife's social security number, evidence he had also done so thirteen years prior was not too remote in time to require exclusion). In contrast, the Defendants are alleged to have violated the EULA in 2008, three years after the Maui X-Stream

incident. SAC ¶¶ 7-12. Also, Defendant Code Rebel's website indicates that Kryeziu conceived of IRAPP TS in 2005, around the same time that Maui X-Stream was accused of impropriety. Hagemann Decl., Ex. 1.

With respect to the third Duran element, the Court finds that this evidence may be offered to prove a material issue: Defendant Kryeziu's knowledge about the taking of open source code without proper attribution, how to spot such activities by his coders, and whether he directed or participated in any reverse engineering. As CTO of Maui X-Stream during the "Cherry OS debacle," Defendant Kryeziu presumably would have knowledge about the taking of open source code without proper attribution and how to spot such activities by his coders. Kryeziu Dep. 157:22. The Ninth Circuit has recognized that prior acts may be used to establish that a party has specialized knowledge of how a particular activity was conducted. See United States v. Martinez, 182 F.3d 1107, 1112 (9th Cir. 1999) (reasoning that prior convictions for importing drugs tended to prove specialized knowledge of how drugs are imported and, therefore, knowledge of courier's drug possession). Here, the evidence suggests that Defendant Kryeziu has specialized knowledge of using third party source code. Given that Defendant Kryeziu states that he extensively monitors the operations at Defendant Code Rebel, it would be unlikely for him to not know whether Defendant Code Rebel's programmers

7

were reverse engineering ACTS or other third party code. Proof of such knowledge would tend to establish Defendant Kryeziu and Defendant Code Rebel's collusion, collaboration, or direction in the reverse engineering at issue.

Alternatively, evidence covered by Federal Rule of Evidence 404(b) "may be used for impeachment purposes." United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992) citing United States v. Stockton, 788 F.2d 210, 219 n. 15 (4th Cir. 1985). The Maui X-Stream evidence is necessary to explain why Defendant Kryeziu would describe such elaborate means of monitoring his programmers. Moreover, it would make Defendant Bykov's denial that such monitoring efforts were ever implemented all the more convincing in impeaching Defendant Kryeziu's credibility.

The Court also finds that the fourth element of the Duran test is satisfied. The Maui X-Stream incident is similar to the facts in the instant case. In both cases, Defendant Kryeziu's company was accused of stealing free software. SAC ¶ 7; Houkom Decl. in Support of Motion in Limine No. 12 [190], Ex. A at 1. Additionally, at least as presented in Plaintiff's expert reports, the conduct in the Maui X-Stream case was very similar to the reverse engineering in the instant case. Id.; Houkom Decl. in Support of Motion in Limine No. 8, [207] Ex. A.

Because the Court finds all four elements of the

1 | Duran test are met, Plaintiff's evidence regarding
2 | CherryOS, PearPC, and Maui X-Stream is admissible under
3 | Rule 404(b)(2). As such, the Court need not determine
4 | whether the evidence would additionally be admissible
5 | under Rule 406.
6 |     The Court also finds that the prejudicial effect of
7 | the evidence here does not substantially outweigh its
8 | probative value.  The key to Rule 403 is not whether
9 | evidence is prejudicial to a party - for almost all
10 | adverse evidence is - but whether the evidence's
11 | "probative value is substantially outweighed by the
12 | danger of unfair prejudice."  Batiz v. Am. Commer. Sec.
13 | Servs., 776 F.Supp.2d 1087, 1092 (C.D. Cal. 2011).
14 |     The Court finds that the danger of unfair prejudice
15 | presented by the evidence here does not substantially
16 | outweigh the evidence's probative value.  Evidence
17 | concerning code misappropriation at Maui X-Stream
18 | suggests that Defendant Kryeziu had the requisite
19 | knowledge to notice and stop any reverse engineering
20 | taking place at Defendant Code Rebel.  Thus, such
21 | evidence is probative.  However prejudicial the Maui X-
22 | Stream evidence may be, that Court finds that such
23 | prejudicial effect does not substantially outweigh its
24 | probative value.
25 |     Accordingly, the Court **DENIES** Defendants' Motion
26 | with respect to excluding evidence of CherryOS, PearPC,
27 | and Maui X-Stream.  Defendants may raise this objection
28 | again if it appears Plaintiff's sole purpose in

presenting this evidence is to show Defendants in a bad light.

**B.  Evidence of Purported Conflict Between Defendants and Apple**

Defendants also seek to exclude all references to purported conflicts between Defendants and Apple.  The Court construes this to refer to Plaintiff's expert report by Lee Gummerman, which concludes that Defendants reversed engineered Apple's OS X operating system and breached Apple's End User License Agreement ("EULA").

The Court finds that evidence of Defendants' reverse engineering of Apple's OS X - and their corresponding breach of Apple's EULA - is admissible under Federal Rule of Evidence 404.

The Court first finds that, as to Rules 401 and 402, the evidence of Defendants' reverse engineering of Apple's OS X is highly relevant.  The reverse engineering of Apple's OS X was Defendant Bykov's asserted method of obtaining the APIs used in IRAPP TS. Houkom Decl. in Support of Motion in Limine No. 8, [207] Ex. A at 6.  Defendant Bykov's testimony is strongly contradicted, and thus impeachable, by the Report; therefore it is more likely that Defendant Bykov reverse engineered ACTS.  Even if Defendant Bykov's story were accurate, he would not only be more knowledgeable about reverse engineering in general, but also about reverse engineering software in the Apple

ecosystem.  Likewise, reverse engineering is the key issue in this case, meaning that evidence suggesting reverse engineering occurred is certainly relevant.

As to Rule 404, the Court again applies the Duran test for "other act" evidence.

The Court finds that the first element of the Duran test is satisfied.  The Gummerman Report presents sufficient evidence that Defendant Bykov reverse engineered Apple's OS X.  The report analyzes Defendant Bykov's actions with respect to discovering the existence and attributes of several APIs.  Houkom Decl. in Support of Motion in Limine No. 8, [207] Ex. A.  Additionally, the report concludes that Defendant Bykov's methods needed reverse engineering of OS X or of ACTS to be successful.  Id.  Thus, a reasonable jury could find that Defendants reverse engineered Apple's OS X.

The Court also finds the second Duran element satisfied.  The reverse engineering of Apple's OS X allegedly occurred in conjunction with the reverse engineering of ACTS.  Houkom Decl. in Support of Motion in Limine No. 8, [207] Ex. A, at 5-7.  Therefore, because the two acts occurred at the same time, they cannot be too remote to warrant exclusion of the evidence of the reverse engineering of Apple's OS X.

The Court finds that the third element of the Duran test is also met. This evidence may be used as impeachment evidence to contradict Defendant Bykov's

asserted method of finding the APIs at issue, as permitted by Federal Rule of Evidence 404(b). <u>Gay</u>, 967 F.2d at 328.

The Court finds that the fourth element is also satisfied because the alleged reverse engineering of Apple's OS X is precisely the conduct alleged to have occurred with the ACTS software.

The last issue is whether the evidence can weather Rule 403 scrutiny. <u>Cherer</u>, 513 F.3d at 1157.

The Court finds that with respect to the assertion that Defendants reverse engineered OS X, the danger of unfair prejudice does not substantially outweigh the probative value. Defendant Bykov's alleged reverse engineering of Apple's OS X establishes his knowledge, and thus competency, in reverse engineering. Furthermore, it shows that Defendant Bykov knew how to reverse engineer in the Apple ecosystem. However prejudicial the evidence of reverse engineering of Apple's OS X may be, the danger of such prejudice does not substantially outweigh its probative value.

Accordingly, the Court **DENIES** Defendants' Motion with respect to evidence regarding Defendants' reverse engineering of OS X.

However, the Court finds that the prejudicial effect of the evidence substantially outweighs the probative value with respect to Defendants' alleged breach of Apple's EULA. Defendants' purported breach of the Apple EULA is not at issue in this case. Even

if Defendants actually did breach the Apple EULA, that issue is not material; it is collateral to the issues to be raised at trial.  Such evidence is likely to mislead a jury or confuse the issues.

Accordingly, the Court **GRANTS** Defendants' Motion with respect to any mention that Defendants breached Apple's EULA.

**C.   Any Other Character Evidence**

The Court **DENIES** the Motion with respect to any evidence referencing any other purportedly wrongful acts allegedly committed by any of the Defendants. Defendants neither identify what this evidence is nor specify how Plaintiff intends to offer this evidence. Furthermore, as Rule 404(b)(2) clearly contemplates, character evidence is not categorically excluded.  Fed. R. Evid. 404(a)(2), (b)(2).  Additionally, character evidence may still be offered as long as it is not used to prove a person acted in accordance with that character.  Fed. R. Evid. 404(a)(1).

### IV.   Conclusion

For the reasons stated above, the Court **DENIES** Defendants' Motion in Limine to Exclude Improper Character Evidence with respect to evidence regarding CherryOS, PearPC, and Maui X-Stream, **DENIES** the Motion with respect to evidence regarding Defendants' reverse engineering of Apple's OS X, **GRANTS** the Motion with respect to any mention that Defendants breached Apple's EULA, and **DENIES** the Motion with respect to any

13

1  evidence referencing any other purportedly wrongful
2  acts allegedly committed by any of the Defendants.
3
4
5  **IT IS SO ORDERED.**
6  DATED: August 28, 2013
7
8                  RONALD S.W. LEW
                _____
9                  **HONORABLE RONALD S.W. LEW**
                Senior, U.S. District Court Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28